Shure, 2009-13-64 Please proceed, Mr. Flannery You can be sure we will hear everything you have to say Good morning You may please the court. My name is Kevin Flannery for Appellant Hearing Components and this case comes to us from a trial of issues to both the jury and the bench in the Eastern District of Texas whereby all issues were decided in favor of hearing components on the 076 and 151 patents and there was, prior to the trial there was an issue of claim construction that was decided on the 912 wax guard patent You had contrary verdicts after the JMOL on the straight nozzled and the bob nozzles? Yes, your honor, that's correct Wasn't there a good reason for that? I don't believe so, your honor. I think on the straight nozzle as we've discussed in our brief, there was instances whereby it was clear that the judge did not understand the, misunderstood the evidence that was presented. What was the structure corresponding to the claim function? The structure, if you, I think that's best illustrated on page thirty five of the blue brief there is if you look at the page thirty five of the blue brief in the middle there's an illustration whereby there is some structure above a connecting portion where that structure does not go the full length of the connecting portion I think if Schor's device were like that we wouldn't be having this discussion here because it would be clear that there's structure Is the is the structure then for the attachment means just the surface of the straight nozzle? No, your honor, if you go to page twenty one of the blue brief I believe it's color highlighted in it's either yellow or pink. Why don't we refer to documents in the record rather than argumentative formulations? Well, I think page twenty one of the blue brief is a document in the record, your honor and that is Schor's engineering drawing okay so the structure to go back to your question, Judge Rader, the structure in Schor's nozzle is that significant portion that's color highlighted in yellow so that structure the portion, that's the surface, isn't it? No, your honor, that's literally half of the nozzle structure itself if that structure did not exist the sleeve would fall off of the nozzle In other words, if you had a narrower nozzle correct, if the nozzle, if the yellow structure did not exist so if the nozzle was just, the outer diameter was encompassed by what is shown in red the sleeve would fall off. Your case is that the that both that basically both the claimed invention and the two Schor products, the smooth and the barbed work on an interference fit basis, right? Yes, yes, your honor. There's there's interference fit in the patent specification there's additional structures as well as interference fit but there is an interference fit with the barbed design you have a hard plastic barb some portion of that going into and engaging a soft plastic duct Let me ask you just one question on one of the figures in the patent I think it's figure 5 since we're in a means plus function here we have to, I guess, look at the figures and structure there figure 5 seems to be and maybe I'm wrong but as best I can tell, it's the one figure in the patent that doesn't show any kind of a tube am I right here that in this in this figure 5, the screw goes right into the foam? Yes, your honor, that's correct. Is that correct? Yes, correct, your honor. So there's no duct there so that would not be covered the soft plastic duct as shown in figure 4 above, for example where the ball engages the socket the ball is hard plastic and it engages the soft plastic socket that socket is, or soft plastic duct that duct does not exist in figure 5 but as is the case in this so there it goes right into the foam with no break between the foam and the screw no duct that's correct, your honor then how would it be detachably attached? would you just unscrew it? Yes, your honor, that's the way it would work so as described in the specification with respect to that one because of certain pitch and the characteristics of the screw thread it was designed such that the the sleeve would not fall off and be left behind in the user's ear but returning to the focus to figure 4 there is an interference fit there and again then returning back to the Shure engineering drawing at page 21 of the blue brief that structure highlighted in yellow as I've indicated if that structure was not present in the Shure device the sleeve would fall off so that is the structure that is intentionally placed into the nozzle and that structure emanates from a connecting portion but if we're talking about fastening means we look to column 3 of the patent that talks about screw threads and a ball and socket attachment and I think somewhere there's adhesive and all of those involve a kind of friction or resistance whereas the smooth instrument on which the court granted the JMOL is quite different from what's disclosed I respectfully disagree your honor I do believe it is different however I don't think it's quite different and I don't think it's substantially different that structure that additional structure that structure in yellow engages that's hard plastic it engages the soft plastic duct and I would submit to your honor that it engages that soft plastic duct in the same manner as the ball the hard plastic of the ball engages the soft plastic duct tell us about the invalidation of the 920 patent for indefiniteness thank you your honor the 920 patent is directed to the wax guard and now here you've got vague language and of course patents are often upheld even when there's vague language in the claim but you've got a district judge a very capable district judge who said I can't figure out where this is definite how I'm to know where the dividing line is how can we reverse that I think your honor can reverse that by concluding that the district judge went too far with his claim construction he queried himself whether he could stop at the construction that would indicate that the wax guard can be used without tools or specialized skills and that was a basis for distinguishing the wax guard over the prior art I believe that the district court made a mistake by then going further and analyzing whether any certain class of certain group of people such as people with infirmities of their fingers that can't handle things well whether they can actually use it without tools or specialized skills but that was not necessary for the district court judge to go that far indeed there was no distinguishing a prior art based upon whether some group does this claim have to be interpreted differently depending upon the age and physical capabilities of the wearer if you've got a 70 year old person with a hearing aid he or she can probably handle it quite nicely if you've got a 95 year old person it might not be readily installed I think they all can your honor if the test is is it necessary for them to use tools or specialized skills and essentially the specialized skills is talking about some type of professional who's used to working with hearing aids and the like so if you stop the test or if the test is for infringement is stop at whether it can be used without tools or specialized skills then I respectfully submit your honor that any person but none of that appears in the claim the claim just says in very vague language what it says readily installed and replaced and I think it's just it becomes a matter of claim construction so in other words the court has routinely instructed us that we're looking for we're not trying to find indefiniteness in the claim we're looking for some construction to render it such that it's not insolubly ambiguous and if you look at the specification and the prosecution history the reasonable interpretation of that term is that it can be used without tools or specialized skills so I agree it doesn't say that in the specification I mean in the claim but I think it becomes a routine issue of claim construction and when we look at that issue of claim construction is can it be construed to a point where it's definite I submit that it is whereby it can be used without tools or specialized skills and there's no need to go any further to construe it as was done by the district court let me ask you one question if we disagree with you obviously we would affirm that the 920 patent is gone it's indefinite however if we agree with you and say that this term is not unconstruable so to speak should we send it back to the district court to construe or would you want us to construe it I think the construction that I would ask your honors to construe it as I think the district court was did query that he could do that it can be construed to be can be used without tools or specialized skills I think the issue is here it's right for decision but you would look at claim construction de novo so I think as a matter of this would require a new trial we didn't have a trial on the 920 patent your honor so then we would have to go back and we certainly if your honors were to construe it in that manner we would have to go and then look at the issues of infringement and validity and damages we did not get to any of that in the trial so I'd like to unless there's any further questions you know maybe it's apparent to me that the district judge is narrowing the issues when he finds a way to eliminate this patent why wouldn't I on that basis sustain his judgment he's doing his best to manage his workload and and give you a fair trial on what he considers to be the most important issues and he brushes this one aside is that is it fair for me to give deference to that kind of a potential decision making yes I believe it is it is fair your honor because it's fair to my client and it's fair to anybody who comes to the court on an issue of claim construction you're asking whether it's fair to give deference I understand that but the issue is claim construction well but I'm saying I could sustain the district judge because he brushed aside your your wax protecting patent using this indefiniteness because he thought he should focus on the other patent so I'm actually arguing that for a form of deference that would cut against you I understand that your honor and I don't think that that deference is appropriate at least as I've read the scores of claim construction cases that have come down and whether that is whether there should be deference as far as I understand the law right now there is not deference but I think it's a different kind of deference Judge Rader's talking about the cases address the question of deferring to a judge's or a district court's construction of a particular term in a claim Judge Rader I think is talking about something else he's saying should we defer to a docket management kind of decision by the district court to narrow the issues in the case by I respect sorry for not letting you finish no I think I'm finished I respectfully submit to you that it's not fair to do that when the claim construction is wrong if your honors feel that the claim construction is wrong then I don't think it's appropriate for the district court to then say well even though I've got the wrong claim construction because I want to manage my docket and this patent doesn't seem to rise to the level of the other patents as far as importance in the case then I can just dismiss it were there other issues of invalidity raised and argued below that the court didn't deal with because it acted on the basis of indefiniteness no your honor in other words if we not on the wax guard patent your honor on the other patents that we had to trial on but not on the wax guard patent in other words in other words if we agree with you there's nothing to remand on with respect to the validity of that patent because there weren't other issues pushed aside there were not other issues pushed aside but there I assume the chore would tell you that they would still reserve the right to challenge validity on obviousness or anticipation grounds or by all means we've used up most of your rebuttal time we'll give you five minutes in rebuttal all right thank you your honor I appreciate it Mr. Kugelin since we're talking about the indefiniteness issue 920 patent that would seem to be an awfully minor ground to knock out a patent on wouldn't it I don't think so with all due respect your honor I think the judge below gave ample consideration to the indefiniteness analysis well I'd repeat that question and add one further query how is this insolubly ambiguous I can see ambiguity they're broad terms but it's not insoluble one of skill in this art certainly knows how to install and replace these features and there's no question that someone of skill would be able to do that but the issue hinges on the readily language and that's the part of the claim language that makes it insoluble but the specifications rather it isn't devoid of language on this it talks about well you don't have to use tools so we're not screwing it on and off with wrenches we know it has to be hand done and it's saying the user can do it without any additional help you don't have to call your nurse to do it it doesn't sound to me like that's insolubly ambiguous I now know it's got to be something that snaps on and snaps off quite quickly and easily but with all due respect there's still the issue of these human factors that are involved who is the user and how long does it take the user to put this on what's readily you've still got the eggshell skull sort of problem in human activity this is of course a user of ordinary capabilities in this field I'm still struggling with how this is insoluble but the user the specification makes clear that there can be multiple types of users and depending on age it may make it more difficult or less difficult for someone to install these and take them off is 20 minutes readily installed for someone who's 90 years old or is it 5 minutes or is it 1 minute and there's no objective metric in the specification but there's no way to do an objective measure we've got case law that says that's one reason for not having indefiniteness because as you point out somebody who's 90 may take a good deal of time to do a simple snap procedure someone who's 60 can do it without any problem at all and so you can't put in a measure well it's got to be 5 minutes or 7 minutes or a sliding scale there's no way to measure human performance well actually Dr. Casale who was an expert that Schur offered did provide the court with testimony that there are ways he's experienced in this art and there are ways to measure this but that would cut against you if someone of skill in the art can say oh I can figure this out easy then it's not insoluble again it would only cut against us your honor if using these different ways you'd come up to the same result but that's not in the record at this point in time Mr. Kuhlman one question on the 920 the same question that I asked Mr. Flannery if we were to disagree with you do you urge us to send the 920 patent back to the district court for construction or would you urge us to construe this term we believe that you can construe the term that the parties have provided the court with the construction that's necessary so I don't think there's a reason to send it back to the court for construction we review things we are not a decisional body do you think it's appropriate for you to ask us to review something or to do something ab initio I do your honor claim construction is an issue of law and the court but we review claim constructions we don't do them you don't think that's a distinction I do I do think that is a reasonable distinction your honor the parties however have both put into the record their respective claim construction positions and we believe that it does not need to be sent back to the district court for construction there is a follow up Mr. Flannery is correct with regard to validity issues sure does have invalidity as well as non-infringement positions so there would still be questions of the act to be tried below on the 920 Mr. Cooperman not to take up all your time on this one issue but we're struggling with being readily installed etc if you look at that claim of course every limitation is theoretically important that's not all there is to this claim comprises that's premium comprising thin flexible membrane that does this one side of which is normally tacky and pressure sensitive adhesive layer a portion of it overlying set out being porous and capable of waxing trap in other words there's a lot to that claim other than just this preamble language well there is a lot to the claim it's a structural claim that's correct your honor I would agree with that alright go ahead with your other argument briefly your honor on the straight nozzle issue excuse me let me ask you you're now talking about the infringement issue right yes Mr. Flannery says and it was the sense I got from the record of the expert for the plaintiff that the patented invention works on an interference fit basis and it was the testimony was it Dr. Chaston or Chaston Chason I'm sorry Chason that the accused devices work on an interference fit basis what is your view on this interference fit issue as to how the patent works and how your client's devices work the evidence is clear that it isn't simply an interference fit with the embodiments of the patent and the specification it's more than that Dr. Wood our expert testified there's a female matching structure that's required is the way to accomplish the one twelve six remember we're dealing with no reasonable jury standard and we've got the preeminent expert in this field Dr. Chaston saying a person of skill in the art would know to replace a ball and socket or a screw with this interference fit it's just kind of a natural thing that would be suggested to them why isn't that substantial evidence and certainly enough to support a jury the known interchangeability alone under Chumanada is not enough to justify a verdict of infringement here we had we had substantial evidence to the contrary from Dr. Wood that again the way that the specification describes the patented embodiments is substantially different it's more than just a mere interference fit it requires female structure and it requires positive  this was digging into the way argument  unrebutted by Dr. Chaston so Dr. Chaston who is an audiologist focused on the audiological side of things Dr. Wood, our expert, who is a mechanical engineer focused on the way under section 112 paragraph 6 these structures actually interacted with each other still the question is whether a skilled artisan would recognize this friction fit as an equivalent of any of the things shown to us in the patent including a friction fit screw type figure 5 example why isn't that enough for the remember it's a jury verdict and figure 5 your honor was not an issue below it was not it does not correspond to any of the asserted claims below figure 5 as Judge Schall pointed out does not have a duct the plastic duct and all insurers accused products have a plastic duct so that was not an issue below nor was it asserted below it's corresponding to any of the claims but it is corresponding structure it's corresponding structure for the claims that don't require a duct what we do have the testament I can't remember the precise I was looking at it earlier there is a part of Dr. Chason's testimony where I think he looked at the he looked at the screw with the duct in the patent and he looked at the ball and socket and he went to some length to explain how this is a friction or an interference fit and then he then he went to the accused devices both I think the barb and the and the smooth device and he said we have the interference fit here now I'll confess when I first look at these things you look at the smooth device especially and you look at the drawings in the patent you say boy these these are different structures but when you have that testimony from Dr. Chason and he keys right into the he keys right into the structure and he keys it to the thing to the accused products and the jury agrees I kind of find myself thinking maybe a little bit the lines of Judge Rader we have a jury verdict here and isn't that substantial evidence I think I know which testimony you're talking about your honor let's see it's at page 3724 I'm thinking about 3788-89 3788 I think the bottom line of Dr. Chason's testimony is while he used some of the magic language he said structure once or twice if you really dig down into what he did he compared function and that's fundamentally contrary to this court's precedent under Chiuminata  he mentioned the word structure but then he goes on to talk about the function that is not enough I don't know didn't he seem to be at those pages getting into he says the ball fits and you know he talked about how the it goes in there and some of the plastic and the duct closes around it a little bit I mean that seems to be saying the structure how the structure operates and then he talked about the accused device I mean maybe you know we can I guess we can quibble about exactly what the testimony is you obviously have a better sense on the record than I do but I just even though my reaction was I look at these first blushes and say boy these do seem different but then when I get into this testimony I'm kind of thinking well you know here's an expert and the jury bought it Dr. Chazen again doesn't have the technical experience that Dr. Wood has in explaining the way he's an audiologist correct correct your honor real real briefly well let me point out to you you you're running down and you wanted to save a little time and if you come back again it'll be to rebut your opponent on the cross appeal if there's anything to rebut so you can make your yes thank you your honor switching to our cross appeal topics the district court erred in denying Jamal on Schur's obvious defense and this should be reversed for at least three reasons first HCI HCI's supposed evidence concerning the teachings of the prior art actually contradicted the express teachings in writing second HCI's claims are nothing more than a combination of known elements it's a classic case under KSR and third Schur's the jury verdict of Schur's barbed earphones infringing is inconsistent with the record that shows the prior art barbed product did not invalidate and then with regard to latches your honor it should also be reversed because the court ignored this court's precedent what did it ignore ignored the Wanlis case with regard to evidentiary prejudice your honor and the ABB case with regard to economic prejudice we'll give you your full two minutes in fact we'll give you three minutes thank you your honor Mr. Flannery excuse me yes thank you your honor the I'd like to return to the discussion of the evidence on the way and picking up on what Judge Schall was saying there was Dr. Chason you were right he did go to the structure evidence Schur has repeatedly tried to say well we're just focusing on function well that's easy to say it's easy to say in the context of a one twelve six analysis but the issue was was there substantial evidence that was presented to the jury and that's the issue and Dr. Chason was qualified as an expert they didn't challenge his qualifications as an expert to testify on this subject and we've cited in our brief the pages and I'm not going to belabor it more than saying there was clear evidence on the way showing how the structure as you indicated there's hard plastic structure that is in the Schur nozzle and it's not just the surface referring back to Judge Schall who is a better person to decide if this jury was reasonable than the district judge who sat and examined them for the days of the trial well I don't think the judge ever questioned Dr. Chason's ability to look at this issue to decide whether there was I'm kind of asking a different question I'm going to kind of the overall judgment of the district court that his jury acted unreasonably and isn't that something within his capability Your Honor I have the utmost respect for the district court judge but I believe in this instance as we pointed out in our brief that he misunderstood the evidence so for example if his basis one of his primary basis for concluding that after watching the evidence one of his primary basis is that Dr. Chason didn't do the proper analysis because he didn't consider the engineering drawings Shor's engineering drawings I mean the district court judge said that but it's very clear that Dr. Chason considered the engineering drawings there was considerable time spent on Dr. Chason's analysis of the engineering drawing page 21 of our brief is analysis of an engineering drawing where Dr. Chason showed how the Shor nozzle has this structure and how it engages with has this structure in the nozzle and how that structure that means attachment structure engages with the soft duct so I don't know what the disconnect was if he misunderstood it at trial after listening for days and days what are our chances of understanding it on appeal in 10 minutes I think your chances are when you look at the appropriate standard of review which is whether there is substantial evidence in the record and as Judge I don't know the way in which that structure exists in the specification again I don't know what the trial court's disconnect was with the evidence but if your question is why can't we defer to the trial court who sat there and said we can't defer   court   there  said we can't defer to the trial court who sat there and said we can't defer to the trial court who sat there and said we can't defer to the trial court you won't be able to said we can't defer  trial court who there and said we cannot defer trial you know on site for another one we           another one we cannot defer trial court who sat you know on site for another one we cannot defer trial court